29 C.C.P.A. (Patents)

## In re HELMOND.

### Patent Appeal No. 4410.

Court of Customs and Patent Appeals.

Dec. 29, 1941.

Jesse A. Holton, of New York City (Louis G. Julihn, of Hartford, Conn., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This appeal is before us for the second time by reason of a petition for rehearing filed April 21, 1941, which was granted June 26, 1941. Our former decision, al-though it appears in 118 F.2d 574, 28 C.C.P. A., Patents, 1013, and 49 U.S.P.Q. 71, did not become final, because set aside by the granting of the petition for rehearing.

In our former decision we affirmed the decision of the Board of Appeals of the United States Patent Office which affirmed that of the Primary Examiner rejecting, in view of the prior art, claims 58, 60 and 61 of an application for a patent for certain new and useful improvements in type-writing machines. There are no process claims and our affirmance was based on our conclusion that although a process claim for making the involved device might have been patentable, the rejected claims for an article only were not patentable.

Reconsideration of the issue after hearing further and more detailed presentation of the facts and law involved, convinces us that the decision appealed from should be reversed.

Ten claims of the application were allowed.

Claim 60 illustrates the nature of the subject matter involved and reads as follows: "60. In a typewriting machine; an open-channel-form tabulating stop rack consisting of a base wall and two opposite side walls, said base wall having tabulating stop receiving perforations and the opposite inner faces of said side walls having stop-receiving grooves corresponding to said base wall perforations and forming stop-buttressing teeth, said rack being a continuous sheet metal piece on opposite margins of which aligned grooves are provided, the piece being formed in channel shape thus presenting the grooves in opposed relation on the inner faces of the side walls."

The references cited are: Kurowski, 1,145,373, July 6, 1915; Helmond, 1,901,-162, March 14, 1933.

The invention disclosed in the application of appellant relates to a one-piece channel-shape stop bar or rack for a typewriting machine. The rack carries a number of stops, one for each letter space, which may be set, and when a counter stop is raised it will project into the path of the set stop and arrest movement of the carriage. The said bar or rack has a slotted base through which the stops project above the rack and the side walls are grooved on the inside to form guides for the stops and abutments to prevent movement of the stops in the rack when meeting a counter stop.

The claims on appeal relate to the stop rack only.

The cited patents are the property of appellant's assignee, Underwood Elliott Fisher Company, and the patentee Helmond of the reference patent is the appellant here.

The patent to Kurowski relates to typewriting machines and more particularly to a series of stops which are adapted to be selectively set into position to cooperate with counter stops. The patent states that "The support or frame which carries the stops may comprise a rack bar or bars formed with internal teeth which separate and guide the stops. Spring detents are preferably provided and arranged to hold the stops in any position in which they may be standing. These detents may comprise spring pressed balls adapted to seat in recesses formed in the edges of the stops."

The drawings of the patent show that the stop rack is of channel shape with a slotted base and inside grooved side walls. The side walls and base are separate pieces secured together by screws at the ends thereof.

The Helmond patent relates primarily to a stop rack used in typewriting machines. It is stated in the specification that a feature of the invention is the construction of a column-stop-bar in the form of a metal tube, which may be made of steel and in oblong rectangular form. The tube, it is stated, is a regular article of commerce. The rack is made by cutting slots transversely in the top and bottom sides thereof, the slots on each side cooperatively registering with those on the other side.

■ In rejecting the involved claims the primary examiner applied the general rule, that there is no invention in forming a member in one piece instead of several pieces secured together, where no change in function or operation is involved, especially as the Helmond reference discloses that it is old to make a stop rack of one piece construction.

The Board of Appeals agreed with the reason for rejection by the examiner, and further stated in its decision that "It is a matter of common knowledge to make things of sheet metal and it appears that applicant has done no more than to make Kurowski's device of sheet metal."

Appellant's contention is that in order to invoke the rule applied below the results and advantages of appellant's construction must have been obvious to the ordinary workman in the art, and that it must have been obvious how the references could be modified to make the one-piece channel construction shown by appellant, and that neither of these two factors was obvious.

The advantages over the prior art claimed by appellant to be possessed by the rack herein are that it was the first to meet commercial needs, its great strength, extreme simplicity, exceptional lightness and economy in manufacture.

The advantages claimed by appellant are not disputed and the sole question to be decided by us is whether or not, in the light of the particular facts in this case, it required exercise of the inventive faculty to construct the rack of a single channel-shaped piece of cold drawn metal provided with side walls having stop receiving grooves corresponding to said base wall perforations and forming tabulating-stop-buttressing teeth internally along the inner sides of the channel and homogeneously integral with said side walls. In other words, do the facts in this case bring it within a recognized exception to the general rule applied by the tribunals of the Patent Office?

An examination of the Kurowski device discloses that the side pieces of the rack are connected by means of a casing extending across the tops and sides thereof. In recesses in the sides there are coiled spring and ball detents which cooperate with notches in the stops as they operate in either an up or a down position. This detenting system we think could not be carried into a single piece rack construction made by casting for the reason that it seems in the restricted space present in such a single piece rack it would be impracticable if not impossible to bore holes from the inside of the side walls. If holes were bored from the outside it would be necessary to provide for some kind of plate or cap to hold the detents in place, and then of course the rack would not comprise a single piece. If the attempt were made to form the Kurowski rack from flat cold drawn stock, before bending it into channel form the ball and spring detents would have to be inserted. Then when the channel shape had been made the stops could not be placed in position. Therefore it would appear that before the rack of Kurowski could be made in a single piece, it would be necessary to do away with the detent structure shown in the rack of that patent.

and to devise some other detenting means which seemingly might involve another invention. Without detenting means of some kind any rack for a typewriting machine would be utterly useless. Since detenting of the stops is a necessary function of a rack bar, it appears to us that the problem presented in making the rack bar of Kurowski in one piece presents something more than merely making in one piece that which had formerly been made in three pieces. We are of opinion that it would not be obvious to one skilled in the art to modify the Kurowski device so as to make a rack of one-piece construction.

■ The reference patents, as stated above, are owned by appellant's assignee, Underwood Elliott Fisher Company, and appellant has long been associated with said company in charge of its standard typewriter development. He certainly must be considered as skilled in the art. The Kurowski patent, dated July 6, 1914, must have been before him while he was engaged in constructing the rack device of the Helmond patent, dated March 14, 1933, and if it required no more than mechanical skill to construct the rack of Kurowski in one piece, he, though skilled in the art, did not do so. His purpose, as can be seen from his Helmond patent, was to construct a stop rack of one-piece construction, and this rack differed essentially from the Kurowski rack.

While the Helmond reference discloses a single piece stop rack it is quite different from the rack shown in the application herein. It is a light rectangular tube, "a regular article of commerce", in which have been cut slots, extending across the top and bottom faces, through which slots the stops are activated. The stops are provided each with a spring contained therein, made by making a slit near one of the side edges thereof dividing the stop longitudinally into a body portion and a spring portion, which latter portion is bent a little. The rack of the Helmond patent differs in form from the rack of the involved application in that it is a rectangular tube and the rack of the application herein is of channel form. The rack of the patent is heavier, less efficient and more expensive to manufacture than is the rack described in the claims. It is clear to us that the rack of the Helmond patent would not suggest making a stop rack in the form defined in the rejected claims.

It will be apparent that a problem existed in this art which was satisfactorily solved by appellant. The chief difficulty presented was in discovering the structure necessary to provide such a rack. This difficulty was overcome by appellant. He took a flat blank of sheet metal and formed the stop-buttressing teeth by milling across one face of the blank thereby forming the teeth for the rack walls. Then a longitudinal groove, in width about that of the top wall of the rack, was made along the middle of the tooth-bearing face. The grooving produces a flat surface and the portion of the blank that has been grooved is thinner than the portion containing the buttressing teeth. Then the tooth portion of the metal was bent up on both sides of the grooved surface to produce the channel shape. By reason of the grooving, when the metal is so bent, there is no distortion of the teeth and no excess or bunched metal in the bends. After the bending operation the stop-admitting slots are formed on the base of the rack by another milling cutter operation.

■ We think that it should be said of the rack of appellant's application that it required invention to produce it. In re Eugene Otto and Casper Heinrich, 121 F.2d 553, 28 C.C.P.A., Patents 1326, and the cases therein cited.

For the reasons herein set out, the decision of the Board of Appeals is reversed.

Reversed.