35 C.C.P.A.(Patents)

## Application of HUBBELL.

### Patent Appeal No. 5347.

Court of Customs and Patent Appeals.

Nov. 29, 1947.

Clair W. Fairbank, of New York City (Francis D. Stephens, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The issue presented in the instant appeal involves primarily but one question— whether or not, under the circumstances shown by the record, it amounted to invention to make an article integral rather than in more than one piece.

The Board of Appeals of the United States Patent Office affirmed the action of the Primary Examiner in rejecting claim 10, the only claim in appellant's application for a patent, for want of invention over the prior art. From the board's decision appellant here appeals.

The invention relates to furnace linings and the single claim here on appeal reads as follows:

"10. A furnace comprising an outer shell open at the top and having a base therein adapted to support a crucible, a lining member resting freely on said base, said member comprising a preformed unitary cylindrical member open at the top and bottom and extending from said base to approximately the top of said shell, said member being formed of a single piece of refractory material and having smooth and unbroken exterior and interior wall surfaces void of lateral or vertical joints and having a burner opening in the wall thereof and being insertable and removable through the open top of the shell, and the inner surface of said member being glazed continuously over its entire area."

The references relied upon by the examiner in his rejection of the claim are:

White, 1,829,320, October 27, 1931.

The publication "Refractories and Furnaces" by F. T. Havard, McGraw-Hill Book Company, New York, 1912.

Appellant's furnace lining is made of a refractory material such as silicon carbide and is employed in types of furnaces where it must withstand intense heat and, more particularly, in such furnaces as are used in connection with a crucible in which non-ferrous metals are melted for making small castings. The crucible inside the furnace is, as usual in the art, heated by heating the wall of the crucible with a very high heat supplied by a flame from a high-pressure burner. The flame is projected into a vertical well formed by an annular

furnace wall or shell adjacent to the lower end thereof and is directed tangentially so that it travels at high speed in a helical path upward and around the crucible, escaping at the top of the furnace.

Appellant's device comprises an outer shell of noncombustible material into which is placed the liner here in controversy. The liner must be larger than the crucible so as to permit the passage of heat around the crucible.

In the early period of the prior art such furnace walls were made in circular fashion by using firebricks of proper shape, and between each layer of bricks cement was placed. Necessarily in the construction of such prior art devices it was difficult to so position the bricks as to make a smooth, uniform surface or to make the furnace truly cylindrical with each portion of the wall equally spaced from the crucible therein. This kind of built-in liner had a comparatively short life because, as the flame traveled over its irregular surface, the cement in the joints was caused to disintegrate and be swept away, leaving more irregularities which harmfully affected the flame action on the crucible and resulted in taking a longer time to melt the metal in the crucible. Such conditions also affected the life of the crucible which became eroded from the impact of the direct flame.

It was necessary in the prior art to frequently shut down operations and tear out the eroded liner and build a new one in its place. This, in the early period of the art, required laying the brick inside the furnace and cementing between each layer. Such construction required the removal of the crucible and the complete cooling of the structure.

The White patent discloses a furnace lining to be used under circumstances similar to those under which that of appellant is used, made of a plurality of circular or continuous ring units, each of which is made of suitable highly refractory material and is of such character that it may be readily installed in the shell of the furnace by lowering each preformed unit from the open top of the furnace. A thin layer of cement is provided between the rings which, White states, results in "producing in effect a one-piece mass lining."

White departed from the prior art teaching and evidently recognized that a smoother inner surface could be obtained in proportion to the number of joints in the wall which he could eliminate.

The reference to the publication cited above need not be explained here in detail since it is cited only to show that it was old in the art to glaze continuously the entire area of the lining as is taught by appellant and recited in the appealed claim. The board did not discuss this phase of the case and it was the position of the examiner that in view of said reference it would not be inventive to glaze the lining. Appellant urges the importance of this feature in the claim. However, in view of our conclusion on the main issue, it is unnecessary for us to discuss in detail our views on the glazing question, although under other circumstances it might be a matter of considerable importance. Appellant argues that his furnace is the first that was ever glazed over its entire area and that if White glazes his furnace before it is installed he must necessarily glaze only the face of the sections, leaving the cement portions unglazed. Appellant points out that glazing a unitary article involves different problems and brings about a different result from the glazing on the inside of a lining after installation in the shell.

The examiner's rejection of the appealed claim, aside from the question relating to the glazing, was based upon the theory, for the most part, that it did not involve invention to make integral that which had previously been made in parts. As to the affidavits submitted by appellant the examiner stated:

"* * * no attempt is made to refute any statement made therein, as they are all accepted as substantially correct."

The Board of Appeals, as before stated, omitted to discuss the glazing question but based its approval of the examiner's rejection, for the most part, upon the ground stated by the examiner that in view of the suggestions in the White patent it did not amount to invention to make in one piece what had been previously made in two or more pieces. The board said:

702

"It is recognized in the White patent that joints in furnace linings are objectionable due to the tendency of the joints to burn out and the patent teaches clearly the advantage of reducing the number and size of the joints to a minimum. White's object was to provide a lining which, as stated in his claim, afforded 'a substantially smooth and uninterrupted surface for the passage of the gases of combustion there over.' The patent discloses the lining built up of massive rings of refractory material with a thin layer of cement between adjacent rings, stating that this produces 'in effect a one-piece mass lining'.

"Applicant even eliminates the thin cement layers between the rings by making the whole lining actually in one piece. However it seems to us that the difference in the smoothness of the White lining and applicant's lining is merely a difference in degree and since White taught the desirability of eliminating the joints applicant's one-piece lining does not involve invention over the lining disclosed in the White patent."

From the above it is observed that the rejection of the tribunals below was based upon the premise that invention was not involved in making a one-piece lining where heretofore it had been made in more than one piece and that White suggested the desirability of having a smooth surface and that he suggested this could be brought about by reducing the number of joints.

The trouble with this conclusion is that the rule stated, that is, that it is not inventive to make an article integral which in the prior art had been made in more than one piece, is in no sense a rule of universal application. It is freely admitted that there are many notable exceptions to this rule and numerous cases are cited by the respective parties hereto which illustrate the manner in which the rule has been applied or held not to apply. We are of the opinion that the facts of record present a case where the rule should not be applied, notwithstanding White's suggestion.

White recognized the fact that the crumbling walls and the uneven surface brought about by the presence of joints and by the cement material coming in contact with the spirally moving flame were undesirable, but all he did about it—or apparently thought he could do about it—was reduce the number of these joints from the number which had prevailed when each brick was joined together in making a circular lining of brick. He had no thought of eliminating all the joints and it seems to us that if he had thought it possible to do so and thereby produce a liner that could properly function if made in one piece he would have so made it and carried out his notion of eliminating as many joints as possible.

No one in the prior art ever made a furnace lining of this type in one piece. White's patent is sixteen years old. No doubt he made an improvement over the art which was prior to him (which improvement was regarded as inventive by the Patent Office), and we think the improvement made by the appellant is such an advancement in the art that the inventor should have patent protection.

In the prosecution of the case in the Patent Office four affidavits were submitted, one by the president of the company-assignee of appellant's application and three by disinterested persons now using appellant's device. They had formerly used the prior art devices or the White device and they pointed out the particulars in which appellant's liner is far superior to the others and stated in detail the many advantages flowing from the use of the one-piece liner. These advantages are recognized by the Patent Office and are of such interest as to justify recitation here. Compared with the prior art liners, this prebuilt, prefired, and preglazed liner has the following advantages:

"1. It has uniform dimensions with a smooth, unbroken inner surface, all portions of which are glazed.

"2. By prebuilding, prefiring and preglazing, much time is saved in changing from the old to the new; the entire cooling-off of the unit is not required; no special care is required in positioning the lining.

"3. On account of its single-piece construction it has uniform expansion and con-

struction (it being remembered that the bottom and top of the furnace is covered by flat top and bottom pieces of refractory materials).

"4. Having no joints, there is no mortar or cement and different units do not vary in proportion to the skill of the bricklayer or the workman installing them.

"5. It is readily installed without the necessity of employing skilled workers.

"6. It retains its original shape and size to a greater degree than the furnaces of the prior art, offers no obstruction to the flame, and causes the heat to be applied uniformly to the inside crucible.

"7. It makes for quicker heating of the crucible and its life is greatly extended.

"8. It remains cleaner and smoother for a longer period of time, and the same applies to the crucible contained therein.

"9. Its repair and up-keep, owing to the facts aforesaid, are at greatly reduced time and cost."

The parties making the affidavits of record, being users of appellant's device and who so highly commend it, never thought of doing what appellant did, notwithstanding White's suggestion and their familiarity with the White device, and it seems to us that it was the unobvious thing to do and no doubt was the successful result of a trial which had been intentionally avoided by others.

We are in disagreement with the view of the board that the smoothness of the inside surface of the liner obtained by appellant is only a question of degree. Appellant seems to have done that which the art tried to avoid for some reason, notwithstanding the fact that the importance of the smoothness of the interior surface was recognized. Appellant solved the problem that confronted White and the art which preceded White, and the gratuitous statement on the part of the examiner to the effect that it was perhaps impossible to "prepare it [a firing furnace] suitably for shipment and in readiness for a suitable furnace lining" is beside the point. Appellant not only taught how to do it, but the record shows it is successfully done, and it is obvious to us that it could be done in furnaces of certain sizes and dimensions.

As to the rule that it ordinarily does not connote invention to make in one piece what had previously been made in more than one piece, it was freely admitted in oral argument that there are notable exceptions to this rule. Many exceptions are pointed out in appellant's brief, and instances where the rule has been applied are cited by the Solicitor for the Patent Office.

This court has on several occasions passed upon this exact question and made exceptions to the general rule. In re Reckford, 62 F.2d 842, 844, 20 C.C.P.A. (Patents) 826, this court was confronted with a question quite similar to that at bar. It involved a rubber eraser attachment for lead pencils. The court pointed out that the applicant's device was "nonadjustable, integrally formed, simple in construction, producible at low cost, commercially practicable, and adapted to accommodate an eraser" of the proper kind, and held that it was novel, useful, and entitled to patent protection. We there said:

"We are unable to agree that the solution of the problem confronting appellant was as simple as stated by the tribunals of the Patent Office. Neither of the references referred to by the Board of Appeals * * * anticipates the invention defined by the appealed claim. Furthermore, those references do not suggest, either separately or in combination, appellant's novel structure, nor the useful results obtained therefrom. It is true, as stated by the Board of Appeals, that appellant's device is a simple one. However, when considered in the light of its accomplishment and the state of the prior art, its simplicity is the determining factor that brings us to the conclusion that the exercise of the inventive faculties was required to produce it, and that it was not obvious to one of ordinary mechanical skill. In the case of Potts v. Creager, 155 U.S. 597, 15 S.Ct. 194, 199, 39 L.Ed. 275, the Supreme Court, among other things, said:

"'* * * The apparent simplicity of a new device often leads an inexperienced person to think that it would have occurred to any one familiar with the subject; but the decisive answer is that, with dozens and perhaps hundreds of others laboring in the same field, it had never occurred to any

one before. The practised eye of an ordinary mechanic may be safely trusted to see what ought to be apparent to every one. As was said by Mr. Justice Bradley, in [Webster] Loom Company v. Higgins, 105 U.S. 580, 591, [26 L.Ed. 1177]: "Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. * * *",","

In Re Otto et al., 121 F.2d 553, 554, 28 C.C.P.A. (Patents) 1326, the court, in reversing a Patent Office decision relating to an adjustable multiple groove sheave which carried belts for the transmission of power, stated:

"* * * In other words the only question presented is whether or not, under the particular circumstances of this case, it would amount to invention to make a part integral which in the prior art had been in two pieces. In most instances in which such a question has been presented, it has been held that as a general proposition it does not amount to invention to make integral that which has theretofore been in two or more parts. There are notable exceptions to this rule. The law is well stated in Canda et al. v. Michigan Malleable Iron Co., 6 Cir, 124 F. 486, 493, as follows:

"'* * * While it is true that there is no invention in making into one whole that which was before in the same form, but in detachable parts, when there is no further consequence, yet it is also true that, if such change produces a more useful result, there may be a quality of invention in making it. * * *'

* * * * * *

"These claimed improvements and beneficial results flowing from appellants' device are not disputed by anyone, and we think that it is a matter of great importance in this case. Something more has been accomplished than merely making one piece out of two. One piece has been made of two under circumstances where beneficial results admittedly are obtained and, in our opinion, bringing about these results required more than the exercise of mere mechanical skill."

We there cited In re Both, 46 F.2d 362, 364, 18 C.C.P.A. (Patents) 863, in which the following was said:

"We have examined the references with much care, and it is apparent that there is nothing novel in the form or make-up of appellant's device, unless it be in the molding of one unit, as we have above indicated. * * *

* * * * * *

"* * * None of the references cited by either the Examiner or the Board of Appeals seems to incorporate the idea which the applicant has suggested, namely, a device consisting of one part completely insulated, to be used as an electric outlet receptacle. There is much merit in his contention that such a device will be safe, economical, and easy to install. It may be claimed that the McBean reference, inasmuch as it shows a cementing of various parts, teaches the art of making a receptacle of one piece, and that applicant's idea is rather that of a process than of a device. We are of the opinion, however, that there may be, and probably is, a clear distinction between a device made of one or more parts cemented together, and one which is made as a whole. * * * Certainly, no one else, so far as the references disclose, has suggested this idea. * * *"

To the same effect, see Krementz v. S. Cottle Co., 148 U.S. 556, 13 S.Ct. 719, 37 L.Ed. 558, which involved a metal button formed of a single sheet instead of joining several parts together as shown by the prior art.

See also In re Daniel, 34 F.2d 995, 17 C.C.P.A. (Patents) 605; In re Wickersham, 75 F.2d 214, 22 C.C.P.A. (Patents) 969; and In re Helmond, 124 F.2d 222, 29 C.C.P.A. (Patents) 795.

We think in cases like that at bar where the article produced is novel, useful, and not anticipated by the prior art that it should be regarded as involving the element of invention, notwithstanding the simplicity of the inventive thought when once arrived at, and that what appellant has done, judged by any standards announced by the courts, is entitled to patent protection. The decision of the Board of Appeals is reversed.

Reversed.