**Application of Annette E. FRIDOLPH..**
**Patent Appeal No. 6841.**

United States Court of Customs
and Patent Appeals.
Nov. 14, 1962.

Barnes, Kisselle, Raisch & Choate, Detroit, Mich. (John M. Kisselle and Basil C. Foussianes, Detroit, Mich., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Associate Judge JOSEPH R. JACKSON, Retired.

MARTIN, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection by the Primary Examiner of claims 1 and 5 of appellant's application, serial No. 688,617, filed October 7, 1957, for "Combined Header and Supporting Member."

The appealed claims are:

"1. In an article of household utility including a window and the like having a definite structural design including as a structural part a horizontal and ornamental unitary member at an upper portion thereof, that improvement which comprises a horizontal T-slot integrally formed in said ornamental structural member and forming at the stem portion of the T, a narrow slit along the length of said member and otherwise leaving the ornamental appearance of the article unaltered, the head portion of the T in said slot being formed as an enlarged elongate recess, whereby said narrow slit may receive a thin body portion of a curtain supporting slider-element and said recess may receive an enlarged head member integrally at-

tached to said body member, and an aperture at one part of said T-slot forming an entrance and exit for said head member, the largest cross-sectional dimension of said unitary member being many times greater than the largest cross-sectional dimension of said T-slot, whereby said unitary member serves its purpose as a structural and ornamental member and a separate track member is unnecessary.

"5. In a structural member of an article of household utility wherein said structural member is a functional part of said article and is provided with a normally visible ornamental surface, that improvement which comprises a horizontal T-slot integrally formed in said member and forming at the stem portion of the T, a narrow slit along the length of the ornamental surface of said member and otherwise leaving the ornamental appearance of the member unaltered, the head portion of the T in said slot being formed as an enlarged elongate recess, whereby said narrow slit may receive a thin body portion of a curtain supporting slider-element and said recess may receive an enlarged head member integrally attached to said body member, and an aperture at one part of said T-slot forming an entrance and exit for said head member, the largest cross-sectional dimension of said unitary member being many times greater than the largest cross-sectional dimension of said T-slot, whereby said unitary member serves its purpose as a structural and ornamental member and a separate track member is unnecessary."

Remaining claims 2, 3 and 4 drawn to more specific structures have been allowed and are not involved in this appeal.

The references relied on by the examiner and the board are:

| | | | |
|---|---|---|---|
| Perry | 841,044 | Jan. 8, | 1907 |
| Moore | 1,152,383 | Aug. 31, | 1915 |
| Dickey et al. | 1,175,136 | Mar. 14, | 1916 |
| Deserty | 1,462,803 | July 24, | 1923 |

Appellant's application relates to a combined header and supporting member and particularly to a unitary member which serves as a header jamb for windows or doors and also as a traverse member for slidably supporting curtains and the like. One embodiment described in the application employs a header member which, instead of being of solid construction, is provided with a relatively small T-slot extending along its length. The T-slot is integrally formed in the header member to define an internal track so that only a narrow slit constituting the leg of the T is visible along the length of the member. The ornamental appearance of the member is otherwise unaltered. Slider members having enlarged head portions adapted to fit in and slide along the T-slot are attached directly to the top of a curtain, as by sewing. The head portions of the slider members are then fitted into the T-slot by introducing them through an enlarged aperture at one point of the T-slot. Thus the curtain is slidably supported by the small T-slot in the header member and curtain rods and other fixtures are unnecessary.

Appealed claims 1 and 5 are somewhat broader than the illustrative embodiment just described. Claim 1 relates to an article of household utility rather than to a mere window frame, while appealed claim 5 describes the header member as a functional and structural member of an article of household utility, the header member provided with a normally visible ornamental surface.

The Moore patent discloses a molding secured to the underside of the lintel of a

doorway or window. A groove of substantially T-shape extends along the length of the molding with its opening at the bottom of the molding. Support elements, having enlarged head pieces slidably disposed in the enlarged portion of the groove, extend downwardly through the groove opening for supporting spaced points along a portiere or curtain to be supported.

The Dickey et al. patent shows a molding strip secured to the casing of a door or window and defining a guideway and guide slot of substantially T-shape for slidably receiving fasteners for supporting curtains and draperies. That structure is substantially the same as Moore's corresponding structure.

The Perry and Deserty patents show a curtain pole and hanger rack, respectively. Both constructions employ a wide guideway and narrow slot for receiving a fastener or support. The slots are provided with enlarged apertures to permit insertion of an enlarged head of the fastener or support.

Claims 1 and 5 stand rejected as unpatentable over either Dickey et al. or Moore in view of Perry or Deserty. The claims also stand rejected on the ground of res judicata in view of the decision by the board on claims 1, 2, 3 and 4 in appellant's abandoned application serial No. 350,670, filed April 23, 1953, of which application the present application involved in this appeal is stated to be a continuation.

The board stated that no issue was raised by appellant before it on the propriety of modifying the primary references, Dickey et al. and Moore, by forming apertures in their structures for access to the T-slots and was of the opinion that such modification was taught by the secondary references, Perry and Deserty. It thus regarded the main issue in the prior art rejection to be in the effect of the recitations in the claims that the T-slot is formed in an ornamental structural member.

It was noted by the board that both Dickey et al. and Moore provide a T-slot in a member intended to be secured to or in contact with a horizontal structural member, or header, of a window or doorway. The rejection on the references was affirmed on the basis that it is not unobvious to integrate the member provided with the T-slot with the structural header in each of those. patents. In reaching its conclusions the board stated:

> * * * Considering the Dickey et al. patent, this patent does not disclose, or has eliminated the conventional curtain rod and the additional fixtures necessary to support the same. Equally important this patent describes * * * the member which has the T-slot as being of the same kind of wood as the interior finish of a room, and is shown * * * as ornamental. The above is also true of the Moore disclosure wherein the corresponding member is described as possessing sufficient strength to hold heavy portieres and *still be sufficiently inconspicuous* to support light curtains as well (emphasis added). * * * "

Appellant urges that she has not merely integrated two parts but has redesigned a present structural element so that it performs its structural and ornamental functions and at the same time the additional function of replacing curtain or traverse rods.

The sole issue raised by the art rejection is whether the subject matter of claims 1 and 5 would be obvious to a person of ordinary skill in the art in view of the references of record. We think the board correctly decided that it would.

Moore and Dickey et al. recognize that it may be desirable to construct their T-slotted members so as not to impair the normal decorative effect of the structural members to which the patentees' T-slotted members are attached. Thus Moore states:

> "The object of the invention is to provide a simple and cheaply constructed device which * * * will possess sufficient strength to hold

heavy portieres and still be sufficiently inconspicuous to support light curtains as well."

In a similar vein, Dickey et al. states:

"The molding-strip * * * is or may be composed of wood, usually of the same kind of wood as the interior finish of a room, and is adapted to be secured to the casing of a door or window, * * *."

Particularly in view of those quoted comments in the Moore and Dickey et al. patents, we think it would be obvious to a person of ordinary mechanical skill that the T-slots of those patents might be embodied directly in the structural member of a door or window, thereby leaving the decorative appearance of the structure almost wholly undisturbed.

Appellant concedes that decisions have generally supported the rejection of claims involving the integration of elements which previously were in two or more parts. It is urged, however, that there are exceptions, appellant citing In re Otto and Heinrich, 28 CCPA 1326, 121 F.2d 553, 50 USPQ 149, and In re Hubbell, 35 CCPA 782, 164 F.2d 700.

We do not find those cases cited by appellant to be in point here.

In In re Otto et al., this court found patentable invention in a multiple V-groove adjustable diameter sheave in which the effective pitch diameter was changed by moving one set of conical disks axially with reference to another set of conical disks. The sheaves were so positioned as to form grooves to fit V-shaped belts. The sole question raised in this court was the correctness of the board's holding that it would not involve invention to make the prior art sleeves integral with the slidable disks. Applicants pointed out that the prior art sheaves were subject to great stress and strain and inevitably received a great deal of hard use and abuse. It was especially desirable to have a device that had the characteristics of ruggedness and that could be easily assembled. Applicants urged that their structure, being more unitary than any other device

known to the art, would stand stresses and strains without injury, and that their structure possessed the merits of ease of assembly and cheapness of manufacture. In that case, this court said:

"* * * Something more has been accomplished than merely making one piece out of two. One piece has been made of two under circumstances where beneficial results admittedly are obtained and, in our opinion, bringing about these results required more than the exercise of mere mechanical skill. It seems to us that in the light of appellants' teaching the structure of the sheave itself has not only been improved but that its durability and ruggedness will result in a great saving in the life of belts used upon the device. * * *"

On the other hand, we find no advantages in the case at bar other than those one would expect to find in the mere placing of the T-slots in the structural member.

In In re Hubbell, supra, this court found patentable invention in claims to a furnace having a one-piece refractory lining. The reference patent to White recognized the desirability of eliminating joints in the lining, but in its disclosure merely reduced the number of joints without eliminating all of them. Applicant supplied four affidavits by parties who were using applicant's device. Three of those affidavits were by disinterested parties. The affiants had formerly used the prior art devices or the White device and they pointed out particulars in which applicant's liner was far superior to the others stating in detail the many advantages flowing from the use of the one-piece liner. Although those advantages were recognized by the Patent Office, it still maintained that since it involved a mere integration of two elements, patentability was not present. However, this court found that the integration caused those advantages and therefore patentability was warranted because there was much more than just the anticipated advantages of integrat-

ing two elements. In that case this court said:

"The parties making the affidavits of record, being users of appellant's device and who so highly commend it never thought of doing what appellant did, notwithstanding White's suggestion and their familiarity with the White device, and it seems to us that it was the unobvious thing to do and no doubt was the successful result of a trial which had been intentionally avoided by others."

The facts of that case offer no precedent for a finding of patentable invention in the instant case.

It seems to us that In re Lockhart, 38 CCPA 1195, 190 F.2d 208, applies to the present situation. Therein this court found claims to a three-piece hypodermic syringe unpatentable. The syringe disclosed in that application was composed of a metal holder, a cylindrical ampule containing a medicament, and a hollow needle. The prior art showed a hypodermic syringe similar to applicant's syringe. However, the tubular body, the thrust portion, and the needle mount, which were integral in applicant's structure, were all separate in the prior art structure. Applicant appeared not to deny that the different elements found in the appealed claims were found in the references. However it was contended that the integral combination of those elements was not found nor suggested in any of the references and that without integration of parts, it was impossible to achieve the inventive combination of applicant's structure. In that case this court did not find itself in agreement with applicant's argument and stated:

"* * * Although it is true that invention may be present under some circumstances in making integral that which was separate before, we do not feel that such is the case here. Improved results only will not

take the case out of the general rule. There is also a requirement that the unification or integration involved more than mere mechanical skill. * * *"

Appellant points out that the prior art constructions existed for more than twenty-five years before the effective date of the present application in 1942,[1] and that in spite of this, the art had to wait this length of time for the invention. We find no support for that contention.

In view of our conclusion that the claims define nothing patentable over the prior art, it is unnecessary to consider the additional ground of res judicata also relied on by the Patent Office. See In re Busch, 45 CCPA 766, 251 F.2d 617.

The decision of the board is affirmed. Affirmed.

---

1. The application states:

"This application is a continuation of my application Serial No. 350,670 April 23, 1953, which in turn is a continuation of my application Serial No. 716,531 filed December 16, 1946 which in turn is a division of application Serial No. 448,405 filed June 25, 1942, now patent No. reissue 23,209."