MARASCO SHOE MACHINERY COMPANY, Incorporated, and Harold E. Marasco, Plaintiffs,

v.

COMPO SHOE MACHINERY CORPORATION, Defendant.

Civ. A. No. 61-140.

United States District Court
D. Massachusetts.

March 20, 1963.

Robert B. Russell, Russell, Chittick & Pfund, Boston, Mass., for plaintiff.

Robert L. Thompson, Gerald Gillerman, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

This is an action for infringement of U. S. Patent 2,962,736 granted to the plaintiff Harold E. Marasco (hereinafter referred to as Marasco) on December 6, 1960, on an application filed February 19, 1959, and assigned by him to the plaintiff Marasco Shoe Machinery Company, Incorporated (hereinafter referred to as Company). The defendant challenges the validity of the patent and denies infringement. The suit originally included another count charging violations of the antitrust acts, which was, however, disposed of before trial.

The patent in suit relates to a two-section pad box for use in making shoes having "Louis" heels by the tabless process. The Louis heel, which is used on ladies' shoes, is characterized, in part, by having applied to its front, or breast, a thin flap which is an integral part of the sole. Prior to the development of the tabless process, the sole would be applied to the shoe and cemented to the shoe with the use of a conventional pad box before the heel was attached. That part of the sole which becomes the breast of the heel, was split. The upper part, the part closest to the shoe, is known as the "tab" while the other half, the breast of the heel, is the "leaf." The tab was then also cemented to the shoe, the heel was loosely attached over the tab and the leaf, cemented to the heal by hand, in that order.

In the tabless process (which was developed in Europe about 1955), as the name implies, the tab is eliminated. The heel is attached to shoe first, and sole and heel breast are cemented to the bottom of the shoe and to the heel in one operation.[1] This requires a pad box by which pressure can be exerted in both directions at the same time.

Marasco, who from 1933 to 1947 had been an employee of the defendant and a protégé of its then president, in the early 1950's started designing and making shoe machinery on his own and in 1953 he formed the Company. In 1957 a shoe manufacturer asked him to devise a pad box which could simultaneously cement

---

1. Cementing, in fact, involves several steps, but in this context the word is used to denote only the last step; namely, holding in place the two parts to be united.

the sole to the bottom of the shoe and the leaf to the breast of the heel.

The conventional pad box is essentially an oval metal frame which holds a rubber diaphragm covered with leather. The lasted shoe is placed on the diaphragm and is held in place by the sole press while the diaphragm is inflated to exert pressure against the surface to be cemented. Marasco's solution to the problem posed by the manufacturer was simply to cut a conventional pad box in two and bolt the two sections back together again in such a manner as to leave room for insertion of the heel. This two-part pad box employs two diaphragms with separate air intakes, one of which exerts pressure against the sole and breast of the heel while the other exerts a counter pressure against the back of the heel. This two-part pad box became, with a few refinements, the subject of the patent in suit.

The patent contains four claims, all of which the plaintiff alleges are infringed and all of which the defendant argues are invalid. The defendant alleges invalidity on three distinct grounds—1) want of invention, 2) anticipation, and 3) inoperativeness. While I am persuaded only by the second defense, I shall discuss all of them in the order listed. The plaintiff, in arguing for validity, relies principally on the simplicity of his device and the fact that it has no moving parts.

### Want of Invention

■ It is the defendant's contention that the mere cutting into two parts of the conventional pad box is not invention. Simplex Wrapping Machine Co. v. Schultz, 128 F.2d 138 (9th Cir.1942). But this is in no sense a rule of universal application. Where the separation produces a more useful result, it may well have the quality of invention. Application of Hubbell, 164 F.2d 700, 35 CCPA 782 (C.C.P.A. 1947). In the instant case the division of Marasco's conventional pad box resulted in a machine which performed an entirely new function which the old pad box was incapable of performing.

Although Marasco's pad box is a simple structure and was simply arrived at, that does not necessarily negative invention. The fact that the defendant's machine designer, Fred Dawson, spent a considerable amount of time with designs, models and experiments to arrive at substantially the same results, alone proves that, although simple, the plaintiff's approach and solution were not obvious.

I also find invention over U. S. Patents 1,160,983 to Hemenover and 2,053,446 to Haselier, both of which disclose only one pad and neither of which was designed to do, nor is capable of doing, the job performed by the plaintiff's device; and neither of which teaches the elements and functions of Marasco's structure nor how the latter are performed.

### Anticipation

■ The principal argument advanced against the validity of the patent in suit is that it was anticipated by the Malverdi Italian Patent No. 547,479 issued on August 3, 1956 and by the Ghini machine which embodies the Malverdi patent, and which was in use in this country in May 1958.

Plaintiff's counsel has admitted, and an examination of both patents and the machine discloses, that the only difference is that in Marasco the forepart and rearpart sections are bolted immovably together, while in Malverdi the rear pad box moves. This is not a significant difference.

In the first place, when in operation, the Malverdi device, locks and also holds the two pad boxes in rigid positions. Secondly, the belting of the front and rear sections in Marasco, instead of advancing the art, in fact eliminates one of the functions of Malverdi's movable part —to admit heels of varying thickness. See Shu-Conditioner, Inc. v. Bixby Box Toe Company, 294 F.2d 819 (1st Cir. 1961).

The plaintiff again stresses the simplicity of his device compared to the prior art. But with the exception of including the added feature that permits adjust-

ment to various heel sizes, Malverdi's pad box structure is no more complicated than the plaintiff's. And while it is true that the Ghini machine is considerably bigger, heavier and more expensive than Marasco's pad box, they are not at all comparable as the Ghini machine incorporates a sole press as well as a pad box.

I, therefore, find all the claims of the patent invalid as having been anticipated.

### Inoperativeness

■ When the sole and heel breast flap are cemented to the shoe, the latter is generally somewhat wider than the heel breast and, at times, the ballooning of the diaphragm wraps the projecting sides of the flap around the heel. Because the patent does not disclose any method of preventing wrapping, the defendant argues that Marasco's pad box is useless. But the evidence at the trial showed that while restrictor plates (which prevent ballooning and consequent wrapping) are clearly useful, they are not necessary as the Marasco pad box is capable of attaching heel breast flaps without wrapping.

I find that the patent disclosed an operative device.

### Infringement

The accused device, which also is patented, Dawson 2,975,442, is remarkably similar to Marasco's pad box; and I find that it clearly reads on Marasco's claims. The defendant can only point out three possible departures of its structure from the claims of Marasco. I find all insubstantial.

Claim 1 [2] calls for an upright heel-breast engaging portion secured to the transverse flange at the base of the front portion of the pad box. Compo's heel-breast engaging part is not attached. Nonetheless, the functions performed by these parts are identical in both machines and they are performed in an identical manner.

Claims 2 [3] and 3 refer to complementary pad box sections as complete units. Compo's pad boxes, when disassembled, prove to be not complete. But there is no question that in the Compo, as in the Marasco machine, each unit, front and rear, is complete and may be inflated independently, when the machine is assembled.

Claim 4 [4] provides for external lugs on both sections of the pad box and bolts holding them together. Compo claims not to have such lugs. But Compo does have the equivalent—projections on the underneath sides of the structure, which serve the exact same function.

In summary, I find and so rule that all claims of the Marasco patent 2,962,736 are invalid having been anticipated by the Italian patent to Malverdi. I reject the defendant's challenge to the validity

2. "A two-section pad box for sole presses, comprising a forepart section having an upstanding peripheral wall and a downturned transverse flange, a forepart pad secured to said peripheral wall in position to engage the shoe bottom and having an upright heel-breast engaging portion secured to said transverse flange, together with a rear-part section bolted to the forepart section and having an arcuate peripheral wall and a down-turned transverse flange, and a rear-part pad secured to the said arcuate wall, and having an upright portion for engaging the rear surface of a heel attached to the shoe bottom."

3. "A two-part pad box for sole presses, comprising complementary box sections as complete units, being bolted together and each having a fluid pressure inlet and a separate flexible pad, the pad of one section having a flat sole engaging portion and a heel-leaf portion disposed at substantially right angles thereto, and the pad of the other section having an upright portion engaging the rear curved surface of a heel attached to the shoe bottom."

4. "A two-part pad structure for sole presses, comprising a forepart pad box having external lugs and a pad with a flat sole-engaging portion and an angular heel-leaf engaging portion, in combination with a rear pad box having external lugs and a heel end pad with an upright portion for engaging the rear curved surface of a heel attached to a shoe bottom, fluid pressure connections for inflating both pads and bolts connecting together the external lugs of both boxes for holding them stationary and in place against longitudinal pressure developed by inflation of the pads."

of the patent on the grounds of lack of invention and inoperativeness. Should this judgment be appealed and on appeal the patent be found to be valid, I find that all claims are infringed.