51 CCPA

**Application of John Ferguson HARRIS, Jr., and Donald Irwin McCane.**

**Patent Appeal No. 7017.**

United States Court of Customs and Patent Appeals.

Nov. 14, 1963.

Bernd W. Sandt, Wilmington, Del., E. I. duPont deNemours & Company, for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges.

ALMOND, Judge.

This appeal is from the decision of the Board of Appeals which affirmed the rejection by the examiner of claims 2, 4, 7 and 8 of appellants' patent application.[1] Claims 3, 5 and 6, the only other claims remaining in the application, were allowed by the examiner.

The invention to which the rejected claims are drawn relates to a homopolymer of an alkyl perfluorovinyl ether, which was "developed in the search for plastics which combine the outstanding physical properties of polytetra-

---

1. Serial No. 618,435, filed October 26, 1956, for "Polymers of Perfluorovinyl Ethers."

fluoroethylene with high enough melt flow to allow their fabrication by melt extrusion or injection molding."

The chemical formula and physical properties of importance are set forth in claim 2, which reads:

"2. A normally solid homopolymer of an alkyl perfluorovinyl ether having the general formula

$$CF_2=CF-OR$$

wherein R is a member of the class consisting of alkyl radicals and fluorinated alkyl radicals having from 1 to 5 carbon atoms, said homopolymer having an inherent viscosity, as measured in dimethyl formamide at 35° C, of at least 0.11."

As noted in appellants' brief, "The polymeric materials claimed by appellants are formed through addition polymerization of the trifluorovinyl group, $CF_2=CF-$, to give polymers which contain recurring structural units having the formula $-CF_2-CF-$."
$$|$$
$$OR$$

The specification indicates that the polymer is formed by initiating the polymerization of alkyl perfluorovinyl ethers with a free radical catalyst under conditions varying over a wide range. The polymerization may be carried out in bulk or in the presence of an inert diluent such as water or a perfluorinated solvent. Among the suggested uses for the polymers are tubing, film, fibers and wire coating.

The references included in the record are:

| | | |
|---|---|---|
| Keel et al. | 2,784,175 | March 5, 1957 |
| Croix et al. | 2,799,712 | July 16, 1957 |
| Dixon | 2,917,548 | December 15, 1959 |
| McCane | 2,982,786 | May 2, 1961 |

The examiner advanced two separate rejections of the claims. The first is based on the Croix et al. patent, and the second is based on the claims of the Dixon patent. The other references of record were incorporated by appellant and were not used as grounds for rejection.

The Croix et al. patent relates to the preparation of fluorinated vinyl ethers by the reaction of an alkali metal alcoholate with a polyfluoroethylene. The alkali metal alcoholates disclosed are of the formula ROM in which R is a radical selected from the group consisting of alkyl, fluoroalkyl and phenyl, and M is an alkali metal. The polyfluoroethylene used "may be represented by the structural formula: $CF_2=CXX'$, where X and X' are selected from the group consisting of H, F and Cl." The claims of Croix et al. also contain the quoted formula, which indicates that it is contemplated that, as one possibility, only fluorine would be attached to the carbon atoms, with no hydrogen or chlorine. However, the specific examples in Croix et al. all relate to vinyl ethers having at least one chlorine or hydrogen atom attached to the carbons at the double bond.

In describing one embodiment of the vinyl ethers were a fluoroalkyl radical is attached at the ether linkage, the following structural formula is given:

"$CF_3CH_2OCF=CXX'$
where X is selected from the group consisting of H, F, and, Cl; and, X' is selected from the group consisting of H and Cl."

From this it will be seen that X can be fluorine but X' cannot. Therefore, perfluorovinyl ethers are precluded from this embodiment. Among the uses of the fluoroalkyl compounds of this embodiment are as "monomeric materials which can be used to form highly fluorinated polymers that are thermally stable, resistant to solvents, and useful as adhesives, coatings, etc."

The Dixon patent is assigned to appellants' assignee. The claims are drawn to a process for preparing trifluorovinyl ethers and to the resulting compounds. Among the compounds produced are alkyl trifluorovinyl ethers, which are the monomers appellants employ as starting materials.

The examiner and the board each made reference to a Berry patent which was not included in the record on appeal. The solicitor states, without challenge by appellants, that Berry also shows that trifluorinated vinyl compounds may be polymerized.

In addition to the references relied on by the board, the patents to Keel and McCane are included in the record on appeal, although they were not before the board until the Petition for Reconsideration.

The Keel patent discloses 1–fluoro–2,2–dichlorovinyl methyl ether. Appellants placed this reference in the record on appeal apparently because the patent states: "Considerable difficulty occurred in attempts to polymerize this unsaturated ether using standard polymerization techniques."

Appellants placed the McCane patent in the record here to show "that useful products can be formed from the perfluorovinyl ethers disclosed and claimed by Dixon which are outside the scope of the polymeric materials claimed by appellants. These dimers are formed, not through addition polymerization, but through a condensation which does not require the action of a catalyst." This patent discloses fluorinated cyclic compounds having the formula $C_4F_6(OR)_2$ where R is an alkyl group or a fluoroalkyl group.

Appellants also rely heavily in their brief on an article by Adams and Bovey in the Journal of Polymer Science. This article states that the authors were unsuccessful in homopolymerizing perfluorinated monoolefins having 3 or more carbon atoms.

The Board of Appeals affirmed the rejection based on Croix et al., stating:

" * * * The polymerizable monomers of Croix et al. thus encompass those employed by appellants to obtain their polymers and the fact that appellants' specific monomers may not be named *per se* is of no moment. In re Rosicky, 47 CCPA 859, 1960 C.D. 197, 755 O. G. 929, 276 F.(2d) 656, 125 USPQ 341."

The board refused to draw the inference that since the perfluorovinyl ethers in question here had not been polymerized in Croix et al., although other monomers were shown to polymerize in the patent, it is unlikely that the patentees had been able to polymerize them. Rather, the board found no distinction disclosed in Croix et al. in ability to polymerize between any of the "highly fluorinated" monomers. In addition, the board stated:

" * * * no reason appears why the identical monomers differing only in the halogen atom would not each be polymerizable due to the presence of the vinyl group. Appellants have cited an article of Adams et al. allegedly supporting their position, but for the reasons stated by the Examiner, with which we agree, appellants' views are not aided thereby. In fact, the Berry patent in column 16 expresses the concept of monomers of the type here in issue and since the monomers belong to a class known to polymerize, the claimed polymers are considered obvious from the monomers. Ex parte Ladd et al., 112 USPQ 337. * * The relevant factual situation in the decision In re Michalek, 34 CCPA 1124, 1947 C.D. 458, 604 O.G. 223, 162 F.(2d) 229, 74 USPQ 107, as noted by the Examiner, however, appears apposite here."

The reasons advanced by the examiner as to why the Adams and Bovey article "does not aid applicants" were:

"(1) The citation deals with perfluorohydrocarbons and the claims are concerned with ethers.

"(2) Applicants cannot deny that trifluorotrichlorethylene [sic] and tetrafluoroethylene, both of which have the $CF_2=CF-$ structure have been homopolymerized.

"(3) The citation states on page 490 that the perfluoroolefin radical will react with itself showing the homopolymerization ability.

"(4) The citation clearly has a concept of homopolymerization ability.

"(5) The date of the citation is about four years before the filing date of this case. Applicants have failed to show that the art since then does not contain disclosures of homopolymerization of perfluoroolefins.

"(6) The reference Croix et al does not require or mention co-polymerization.

"(7) Claim 8 on appeal is not limited to homopolymers."

The argument advanced by appellants is that "Croix et al is strictly limited to the *preparation* of the vinyl ethers and has absolutely no bearing on the chemical reactivity of the resulting vinyl ethers or their ability to form polymeric products." The patentees in Croix et al., argue appellants, distinguished between perfluorovinyl ethers (fully fluorinated at the double bond), which were *prepared* within the teaching of the patent, and *partially* fluorinated vinyl ethers which were *polymerized* in the patent. Appellants state "this reference [Croix et al.] can actually be divided into two parts, one relating to the preparation of the vinyl ethers, the other relating to the vinyl ethers as novel products." Moreover, appellants contend, the distinction between fluorovinyl ethers which are fully fluorinated at the double bond and those which are only partially fluorinated at the double bond has been recognized by the granting of both the Dixon and the Croix et al. patents which claim the distinct compounds. If one kind of fluorinated vinyl ether is not obvious in view of the other, then the polymers of each kind should also be patentably distinct, according to appellants. They state that because of "the well established principle that catalytic activity, which is required to form appellants' polymeric materials, is not predictable," it is not predictable that one type of fluorovinyl ether is polymerizable from the fact that another type may be polymerized.

We are of the opinion that the claims are properly rejected on Croix et al. There is no question that the patent states that the fluorovinyl ethers derived from the reaction of trifluoroethanol and polyfluoroethylenes which are partially fluorinated at the double bond are monomers which form "highly fluorinated polymers." One skilled in the art would be likely to assume that the substitution of another fluorine atom for hydrogen or chlorine at the double bond would not impair polymerizability. This is particularly true in view of the fact that throughout the specification and claims of Croix et al. the symbols "$-CF=CXX'$" are used in describing the vinyl portion of the compounds. In all but one of these structural illustrations, $X$ and $X'$ are said to be "selected from the group consisting of H, F and Cl." In the only paragraph where this description is not used, the symbol "$X'$" is said to be "selected from the group consisting of H and Cl." The only statement of utility in the patent, including the use in forming polymers, is in this same paragraph. One looking for a use for the compounds where $X'$ in the formula is fluorine would find nothing in the patent. Were it true that the patent is intentionally divided into two parts, as alleged by appellants, it is likely that some statement of utility for the *other* fluorovinyl ethers would have been included.

We find no clear division in the patent between polymerizable fluorovinyl ethers in one part of the specification and a method of preparing other fluorovinyl ethers in another part of the specification. The products described in the specification as monomers are claimed in

such a manner as to include the fluorovinyl ethers prepared by the novel method of the other part of the specification, which admittedly includes appellants' monomers. Even if there is a division, it appears to us that the use of the fluorovinyl ethers of one part of the specification in the same manner as that disclosed for the fluorovinyl ethers in the other part of the specification would take no more than ordinary skill in the art. The division of the Croix et al. patent that is urged by appellants is artificial, and we prefer to consider the specification as a unitary whole, as it appears to have been intended to be read. On reading the patent as a whole, we think it fairly suggested that perfluorovinyl ethers could be polymerized.

What might appear to be obvious to one skilled in the art may well be shown to be non-obvious subject matter by a clear showing of obstacles which the art had theretofore found insurmountable. Such is not the case here, however. Appellants seek to illustrate the difficulties which the prior art experienced in polymerizing other related compounds as evidence of the fact that the art would expect difficulty in polymerizing the monomers in issue here. But the evidence introduced is negative in nature and does not suggest a relationship to the monomers polymerized by appellants.

The Adams and Bovey article is not in the printed record, but reproductions were prepared by appellant and given to the court by the solicitor at oral argument.[2] The article states that the authors were not able to produce homopolymers from perfluoroolefins having three or more carbon atoms. We are not persuaded by the Adams and Bovey article that one skilled in the art would not find it obvious to polymerize alkyl perfluorovinyl ethers. The compounds in

the article are related, but clearly different. One might well expect different reactions with an olefin and a vinyl ether. The fact the olefin does not polymerize is not conclusive that the vinyl ether will not. For a negative disclosure like that of Adams and Bovey to show unobviousness of a reaction, a much clearer correlation between the materials used, the reaction conditions, the type of reaction, etc. should be presented. Failure to polymerize could result for a number of reasons, many of which would have no relationship to the number of fluorine atoms in the vinyl group. Different reaction conditions might result in a failure to produce a particular product. See In re Jacobs et al., 318 F.2d 743, 50 CCPA 1316.

The Adams and Bovey article does not purport to be an effort to produce homopolymers of alkyl perfluorovinyl ethers. There is no reason to assume that Adams and Bovey would not be successful had they attempted to polymerize alkyl perfluorovinyl ethers. There is no indication that the reason Adams and Bovey failed to polymerize somewhat similar compounds was because of a problem here solved by appellants. Indeed, we have no showing here of any problem or any solution, merely that polymerization occurred. We recognize that an applicant need not theoretically explain his invention, but, on the other hand, we find no compelling reason to find appellants succeeded in solving a problem which caused the failure of Adams and Bovey.

Since perfluoroethylene had been homopolymerized, according to the unchallenged statement of the examiner, the fact that higher perfluoroolefins had not been homopolymerized by Adams and Bovey does not suggest that perfluoroethylene derivatives, as shown in Croix et al., could not be homopolymerized. The failure of Adams and Bovey is in-

2. While this procedure is improper under our rules (see Rule 14), the Adams and Bovey article was considered by the examiner and the board and was submitted here through the efforts of counsel for both parties who agreed that the ref-

erences are properly before the court. Rules of court may not be dispensed with by stipulation of parties, but the result is the same whether or not the article is considered, in the view we take of the case.

conclusive on the issue of obviousness here presented.

We believe that the examiner's reasoning is sound, as quoted above, and that the Adams and Bovey article fails to rebut the showing of obviousness in view of the Croix et al. patent.

■ While the remarks concerning the merits of the Adams and Bovey article might be applied to the patent to Keel et al., we will not consider this reference because it was not considered by the Board of Appeals. The new arguments based on Keel et al. were not before the tribunal whose decision is appealed and hence will not be considered here. See In re Phillips, 315 F.2d 943, 50 CCPA 1223.

■ By the same token, the Miller affidavit will not be considered because it was presented with the request for reconsideration after the decision of the Board of Appeals. We do not have the benefit of the views of the examiner or the board on the affidavit.

The contention that issuance of the Dixon patent is evidence of the unobviousness of polymerizing fully fluorinated vinyl ethers where only partially fluorinated vinyl ethers are disclosed as polymerizable is not persuasive. We see no connection between the ability to form an ether from an alcoholate and the ability to polymerize a perfluorinated compound. Moreover, the court does not, as a general rule, consider allowed claims in other patents which are not the basis of the rejection in question. In re Atwood, 267 F.2d 954, 46 CCPA 901.

The fact that a catalyst is used to form the high molecular weight polymers claimed does not make the formation of polymers from the Croix et al. products unobvious. No catalysts are claimed here, so "the well-established doctrine that catalytic activity is not predictable" has no application here. No method of polymerizing is claimed. There is no allegation that anything other than conventional polymerization with conventional catalysts under conventional conditions takes place.

Appellants cite four Board of Appeals decisions in support of their argument that it would be unobvious to polymerize perfluorovinyl ethers. They are: Ex parte Blumenthal, 114 USPQ 512; Ex parte Teter and Bauer, 105 USPQ 191; Ex parte Boyd and Walter, 105 USPQ 451; Ex parte Williams and Neal, 39 USPQ 125. Each one of those cases involved "closely related" compounds, including homologs or analogs. In the instant case, there is no issue of homology or structural similarity because the precise compounds appellants employ as monomers are admittedly disclosed in Croix et al. We agree with the Board of Appeals that polymerization of the monomers disclosed in Croix et al. is obvious to one skilled in the art and that our decision in In re Michalek, supra, is more in point. That case related to the patentability of a thermoplastic resin formed from nuclear substituted dichlorostyrene. Appellants argue a factual distinction between this case and Michalek because there the prior art patent stated: "It sometimes is desirable to have present in the reacting mixture an agent which will inhibit polymerization of the vinyl-aromatic process and that such agent may be used in practicing the invention." We do not find mention of a polymerization inhibitor in Michalek distinguishing, since there is a clear suggestion of polymerizability in the Croix et al. patent here from the fact that other polyfluorovinyl ethers polymerize.

Having found the claims to be unpatentable over Croix et al., it is unnecessary to consider the other rejection based on the claims of the Dixon patent. In re Fridolph, 309 F.2d 509, 50 CCPA 745.

For the reasons stated, the decision appealed from is affirmed.

Affirmed.

SMITH, J., concurs in result.