51 CCPA

**Application of Norman B. CHRIS-TENSEN.**
**Patent Appeal No. 7084.**

United States Court of Customs and Patent Appeals.
April 16, 1964.

Mack D. Cook, III, Akron, Ohio, for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and AL-MOND, Judges.

SMITH, Judge.

The Board of Appeals sustained the examiner's rejection of appealed claims 18 and 19 of appellant's application [1] as "patentably indistinct" from *the claims* of appellant's own previously issued patent.[2] The application upon which the patent issued was a continuation-in-part [3]

1. Serial No. 616,994, filed October 19, 1956, for "Control Device for Vehicle Suspension."

2. U. S. Patent No. 2,970,614, issued February 7, 1961, entitled "Control Device for Vehicle Suspension."

3. Serial No. 718,820, filed March 3, 1958.

of the instant application and was co-pending with it. Thus, the issue raised by the rejection is one of pure "double patenting," i. e., whether appellant is seeking more than one patent for but one patentable invention.

Appellant's invention relates generally to a suspension system for vehicles, wherein a bellows type air spring is positioned between the vehicle frame and the axle and supports the frame at a constant level with respect to the axle. When an increase or decrease in the vehicle load tends to cause a corresponding change in the riding level of the vehicle, air may be added to or removed from the bellows, thereby causing the riding level to remain constant. Since this suspension system is designed to compensate only for static vehicle loads, it is necessary for the air regulating control device to be relatively insensitive to short term or momentary changes in load such as occur when the wheels pass over bumps or dips in the road surface or when the vehicle is driven through a banked turn. Appellant accomplishes this by incorporating damping means and a resilient torsion member. Since the entire controversy in this case centers around the resilient torsion member, it will be described in detail, while a generalized functional description will suffice for the remainder of the system.

As described in the specification and defined in the appealed claims, appellant's system functions in the following manner: A mechanical means senses changes in the distance between the vehicle frame and the axle housing and transmits this information to the control device in the form of torque. In the control device this torque is applied to a member which in turn rotates a plug. Attached to the plug is a valve actuating member which is positioned such that any substantial rotation of the plug will cause the valve actuating member to open either one of two valves which serve to supply or exhaust air to and from the bellows. Thus the desired constant distance between the vehicle frame and the axle housing is automatically maintained.

The necessary damping or time delay is partially accomplished by providing opposed hydraulic or mechanical pistons at one end of the valve actuating member. Appellant further decreases the sensitivity of the control system to sharp bumps and ruts by providing, in the words of the claims, a "resilient torsion member" as the member which receives the applied torque and rotates the plug. In one embodiment, the specification simply describes this element as a "torsion bar," which we assume means a bar or rod which is formed from a suitably resilient material and capable of storing and gradually releasing torsional energy (much like a twisted rubber band). A second pertinent embodiment is shown in Fig. 7, reproduced below. In this construction the "resilient torsion member" consists of shaft 126 in combination with a coiled spring 125 and four pins.

FIG. 7

One end of the shaft is attached to control rod 30 and the other is rotatably journaled in end wall 133 of plug 128, to which is attached valve actuating member 58. When the applied torque from control rod 30 causes rotation of shaft 126, shaft pin 138$a$ will contact spring end 125$a$ and begin to uncoil the spring. The spring end 125$b$ is restrained from a corresponding movement by contact with plug pin 140$b$. However, after a momentary delay, and if the rotation of the shaft 126 persists, the torsional energy in the spring will urge the spring end 125$b$ to its original position in contact with the shaft pin 138$b$, applying a rotative force to the plug pin 140$b$, the plug 128 and thus ultimately to the valve actuating member 58.

It should be noted that the broad term "resilient torsion member" clearly embraces both a "torsion bar" and the shaft-pin-spring combination shown in Fig. 7.

Since we are faced with, in the words of the board, "a rejection on double patenting," we are required to determine whether the appealed claims define a "patentably distinct invention" over that claimed in appellant's patent. In re Zickendraht, 319 F.2d 225, 50 CCPA 1529. Such a determination necessarily requires a careful analysis with respect to what, precisely, is *claimed* in both the patent and the appealed claims, and then a close comparison of the two inventions.

Both appellant and the solicitor devote much of their briefs to the question of whether the various claims in the patent and in the instant application are "specific" or "generic." Apparently the position of the solicitor is that appealed claims 18 and 19 and patent claim 1 are all "generic" and therefore, as stated by the board:

"The law is clear. Where the same applicant presents two or more co-

pending applications disclosing different embodiments generic claims may be allowed in but a single one of the patents. If present in two or more of the patents, the generic claims in the later issued patent are void. When one patent has issued with generic claims, the generic claims in the still pending application should be rejected (as has been done herein) on the ground of double patenting.   *   *   *"

Like so many "rules" of law, however, the above statement is not a rule at all but merely a generalized test which has occasionally been found helpful in certain fact situations. And like so many such rules, its statement confuses and obscures the real issue, and thus is apt to do more harm than good. As we recently indicated in In re Sarett, 327 F.2d 1005, 51 CCPA ——, the term "generic" has only relative significance. The further question always arises: To *what* is the particular claim "generic" or "specific?" The solicitor and, to some extent at least, the appellant would have us dispose of this case merely by deciding whether or not patent claim 1 and appealed claims 18 and 19 are all "generic." But characterizing the claims in this manner does not resolve the issue, nor does it further the analysis of the problem. The other apparently simple (and therefore deceptively dangerous) "rules" with which the double patenting field seems to abound, such as the "criss-cross readability test," likewise obscure the real issue. Instead, the correct procedure for double patenting cases is to analyze the claims to determine the inventions defined therein, and then decide whether such inventions, as claimed, are *patentably distinct* and therefore qualified to be claimed in separate patents. Accordingly, appealed claim 19 and pat-

ent claim 1, the two most pertinent of those here involved,[4] are set forth element by element in parallel columns for ease of comparison:

| Christensen—Ser. No. 616,994—Claim 19 | Christensen—Patent No. 2,970,614—Claim 1 |
| --- | --- |
| A control device comprising, | A control device comprising, |
| a unitary housing having a first bore, | a housing having a first bore, |
| a second bore intersecting said first bore transversely thereof, | a second bore intersecting said first bore transversely thereof, |
| opposed valve means at one end of said second bore, | opposed valve means at one end of said second bore, |
| damping means at the other end of said second bore, | damping means at the other end of said second bore having a predetermined rate of movement, |
| a plug rotatable in said first bore and extending transversely of said second bore, | a plug rotatable in said first bore and extending transversely of said second bore, |
| a rigid member in said second bore attached to said plug and adapted for engagement with said valve means and damping means respectively at opposite ends thereof, | a rigid member in said second bore attached to said plug and having opposite ends adapted for engagement with said valve means and damping means, |
| said damping means providing a time-delayed movement of said rigid member, | |
| | a shaft rotatable in said first bore and coaxially disposed to said plug, |
| | a first lever means attached to said shaft, |
| and a resilient torsion member in and extending longitudinally of said first bore to selectively rotate said plug and actuate said valve means. [Emphasis added.] | a second lever means attached to said plug, |
| | and a coiled torsion spring resiliently connecting said levers whereby synchronous movement of said levers is limited by the rate of movement of said damping means upon actuation of said shaft. [Emphasis added.] |

---

4. As appellant states:
"* * * it can be seen that claim 19 is broader in scope than claim 18 except as to the longitudinal 'extending' limitation for the torsion member but consideration of this limitation is not essential to determination of the issues presented by this appeal."
We agree, and will therefore treat the two appealed claims as one for the purposes of this appeal.

It can be seen that the only significant difference between the two claims resides in the emphasized portions. Appealed claim 19 recites a "resilient torsion member" while patent claim 1 calls for a shaft in combination with a pair of lever means and a coiled spring. Since the record contains no art other than appellant's patent, we shall make no effort to determine exactly what the novelty of the invention is in each of the claims. The invention of each claim, as set forth therein, is a control device consisting of a combination of the claimed elements.

The ultimate question then is whether a control device in which one of the elements is a "resilient torsion member" is patentably distinct from a control device in which the corresponding element is a shaft-lever-spring arrangement. And in order to resolve this question we need only determine whether the embodiment shown in Fig. 7 of the appealed application, i. e., the shaft-pin-spring arrangement, is patentably distinct from the shaft-lever-spring arrangement of patent claim 1. The fact that the other embodiment disclosed in the appealed application, i. e., the "torsion bar," might be patentably distinct from the shaft-lever-spring combination claimed in patent claim 1 is immaterial in this case. For if the shaft-pin-spring arrangement of appealed claim 19 is patentably *indistinct* from the shaft-lever-spring arrangement of patent claim 1, then to allow a patent for appealed claim 19 would be to extend the lawful patent monopoly which appellant enjoys with respect to patent claim 1 *beyond* its lawful term of years. This is the principal thing which the rule against double patenting is supposed to prevent.

It is unnecessary, in this case, to discuss the patent specification, for we think patent claim 1 is sufficiently clear for purposes of discussion. In the structure of patent claim 1, torsional energy from the shaft is transmitted to the coiled spring through the first lever means, and is released gradually through the second lever means to rotate the plug. This release of energy is limited by the damping means which damps the motion of the valve actuating member. But the embodiment of the appealed claims shown in Fig. 7 operates in exactly the same manner. The torsional energy from the shaft 126 is transmitted through the pins to the spring, and the gradual release of such energy is limited by the damping means. Thus, the claims define the same invention. To allow the appealed claims would therefore result in double patenting.

Appellant points out that patent claim 1 calls for a pair of "lever means" while the embodiment shown in Fig. 7 and disclosed in the instant application requires the use of "pins." This, however, is a distinction in which the only difference is in nomenclature. We agree with the statement of the solicitor that:

"Appellant contends, in effect, that the pins 138a–138b and 140a–140b do not correspond to the first and second lever means, respectively, because they coact with the spring at alternate times depending upon the rotational direction of shaft 126 * * *. However, 'lever means' is not restricted to representation of a single element, and the claim merely requires spring connection of the 'levers' (i. e. 'first lever means' and 'second lever means') such that their synchronous movement is limited by the damping means. This is certainly true for the pins in Fig. 7 of the application. * * * "

Appellant urges that it is inequitable for the Patent Office to allow a relatively narrow claim like patent claim 1 to issue first. In this regard, we need only repeat the board's answer to the same argument:

" * * * We point out that, contrary to the indications made by the three questions set out in Paper No. 24, page 2, appellant and his Counsel are the ones who had it entirely within their control to add (as they elected) or omit generic claims from the application that issued as a patent. * * * "

The decision of the Board of Appeals is accordingly affirmed.

Affirmed.