56 CCPA

Application of Alan J. LEMIN, Arnolds Steinhards and George Swank.

Patent Appeal No. 8127.

United States Court of Customs and Patent Appeals.

April 10, 1969.

Carl A. Randles, Jr., Kalamazoo, Mich. (Eugene O. Retter, George T. Johannesen, Kalamazoo, Mich., of counsel) for appellants.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the final rejection of claims 1 to 9 and 11 of appellants' application.[1] The rejection of claim 10 was reversed by the board.

The invention relates to herbicidal compositions used for preventing germination of undesired plant seeds and controlling growth of noxious weeds by contacting the seeds and weeds with a herbicidally effective amount thereof. The herbicil compositions contain, as the essential active ingredients, an N,N-disubstituted-a,a-diphenylacetamide and 2,4-dichlorophenoxyacetic acid (2,4–D). The specification discloses that 2,4–D is a known herbicide particularly useful in control of undesired broadleafed weeds and that the acetamides are known compounds also. It is said, however, that the compounds are mutually hyperactivated in the presence of each other, and that herbicidal compositions containing them in association produce more effective control of weeds than either active ingredient when used alone. Mutual hyperactivation is allegedly observed over a wide range of proportions, about 10% to about 90%, of one active component and about 90% to 10% of the other may be combined, the proportion being influenced somewhat by the proportion of broad-leafed weeds and grassy weeds in an area to be controlled. A major proportion of 2,4–D is used when there is a high proportion of broad-leafed weeds; an area infested with a high proportion of grassy weeds is treated with a major proportion of the acetamide.

Claim 1 is illustrative:

1. The method of preventing germination of plant seeds and controlling growth of plants which comprises contacting said seeds and plants with a herbicidally effective amount of a composition containing, as the essential active ingredients, 2,4-dichlorophenoxyacetic acid and N,N-disubstituted-α,α-diphenylacetamide repre-

1. Serial No. 385,032, filed July 24, 1964, for "Comrpositions and Process."

sented by the following structural formula:

wherein $R_1$ and $R_2$ are selected from the class consisting of alkyl of from 1 to 3 carbon atoms, inclusive, and alkenyl of from 3 to 4 carbon atoms, inclusive, said 2,4-dichlorophenoxyacetic acid and N,N-disubstituted-α,α-diphenylacetamide being present in amounts sufficient to be mutually hyperactivated.

Claims 2 and 3, method claims also, are narrower than claim 1 in being restricted to an N,N-dialkyl-α,α-diphenylacetamide and N,N-dimethyl-α,α-diphenylacetamide respectively.

Claims 4, 5, 7 to 9 and 11 are directed to the herbicidal compositions of the method claims wherein the acetamide is selected from the general formula of claim 1 (claims 4 and 7), is an N,N-dialkyl (claims 5 and 8), or is an N,N-dimethyl (claims 9 and 11) compound— with a carrier and wherein the active agents are 0.25% to 80% of the composition. In claims 7 and 8, there is a mixture of from about 10% to about 90% 2,4–D and from about 90% to about 10% acetamide; in claim 9, there is 50% each in the mixture; and in claim 11, there is a mixture of 25% 2,4–D and 75% acetamide.

Claim 6 recites an emulsifiable concentrate comprising, as the essential active ingredients, 2,4–D and an acetamide selected from the general formula, a substantially water-immiscible solvent carrier and a surfactant, the active agents "being present in amounts to be mutually hyperactivated."

The claims were rejected by the examiner under 35 U.S.C. § 103. The references are:

| | | |
|---|---|---|
| Soper | 3,063,822 | November 13, 1962 |
| Pohland | 3,120,434 | February 4, 1964 |

Soper discloses that N-monoalkyl-diphenylacetamides are effective against grasses as herbicides. The N-methyl, N-ethyl and N-(n-propyl) compounds are specifically disclosed. After illustrating several formulations of the active compound, the reference states:

Other herbicidal compounds as for example 2,4-dichlorophenoxyacetic acid and its salts, which are active against broadleaf weeds and legumes, can be incorporated into any of the above formulations by methods well known to the art.

Pohland discloses the use of N,N-dialkyl-diphenylacetamides as selective herbicides. Specifically disclosed are the N,N-dimethyl, N,N-diethyl and N,N-di-n-propyl compounds.

The examiner was of the view that the claims were unpatentable over Soper in view of Pohland on the ground that since the N,N-disubstituted disphenylacetamides are known herbicides as taught by Pohland, it would be an obvious extension of the art to employ the structurally obvious N,N-disubstituted diphenylacetamides in the Soper patent. With respect to two Rule 132 affidavits submitted in support of appellants' contention that unexpected properties of mutual hyperactivation or coaction are obtained, the examiner opined that the affidavits at most showed merely an additive effect due to differences in response of the individual toxicants to different types of grasses, and apparently demonstrated a diminished effect and pos-

sible antagonism between the active agents and therefore did not constitute clear evidence of an unobvious result.

The board affirmed the rejection of all claims, save one, stating:

> While the last column of Table I of page 2 of this affidavit employing a mixture of 1.5 lbs. of 2,4–D and 0.5 lbs. of the dimethyldiphenylacetamide seems to indicate (by reference to the first affidavit) that 2,4–D serves to activate to some degree the acetamide, the showing is inadequate to establish coaction in any other proportions.

In their request for reconsideration, appellants submitted certain technical publications alleged to show the importance of the invention and supply the criticized deficiencies of the affidavits. The board refused to consider these newly submitted documents and adhered to its decision.

■ Appellants advance several arguments in support of their position that the board erred. It is contended that the art does not suggest substitution of the N,N-dialkyl-α,α-diphenylacetamide of Pohland for the N-monoalkyldiphenylacetamide of Soper. We disagree. The closely related structural and herbicidal characteristics of the two would suggest to the art their interchangeability. Furthermore, a reading of the two references discloses that the compounds of Pohland exhibit toxic superiority over those of Soper thereby supplying the motivation for substitution.

Appellants further contend that Soper fails to teach coaction or mutual hyperactivation and constitutes no more than a bare teaching of combining the two herbicides. In contrast, it is argued, appellants' invention displays this unexpected and unobvious property as evidenced by the afffidavits of record.

The pertinent portions of the principal affidavit are reproduced here:

> An experiment was designed for the purpose of determining the post-emergent herbicidal activity of combinations of 2,4-dichlorophenoxyacetic acid (in the form of its dimethylamine salt) and N,N-dimethyl-α,α-diphenylacetamide. Accordingly, five different herbicidal compositions were prepared and applied to test plots of weed seedlings about 3 weeks old. Each composition was applied to three replicate plots. Evaluations of herbicidal activity were made two to three weeks after treatment. Values of 0 to 10 were used where 10 is 100% kill.

The herbicides were applied at the rate of 2 lbs. of active ingredient or mixture per acre with the observed activities shown in the table:

| Weed | N,N-dimethyl-α,α-diphenylacetamide (A) | 2,4-dichloro-phenoxyacetic acid (B) | Mixture of 1 lb. A and 1 lb. B | Mixture of 1.5 lbs. A and 0.5 lb. B | Mixture of 1.5 lbs. B and 0.5 lb. A |
|---|---|---|---|---|---|
| Crab-grass | 6 | 0 | 5 | 6 | 3 |
| Wild oats | 5 | 0 | 2 | 4 | 2 |
| Quack-grass | 5 | 0 | 3 | 5 | 4 |
| Bindweed | 0 | 8 | 6 | 4 | 6 |
| Sheep Sorrel | 2 | 8 | 5 | 5 | 7 |
| Lambs-quarters | 2 | 8 | 6 | 5 | 7 |

A subsequent affidavit shows that N,-N-dimethyl-α,α-diphenylacetamide is not an effective post-emergent herbicide at rates of 0.5 and 1.0 lb. per acre against

*any* of the weeds shown in the table above.

While finding that the data shown in the last column of the table evidenced some coaction in a mixture of 75% 2,4–D and 25% acetamide, the board failed to see any coaction in other proportions, stating:

> For example, in the adjacent column in this table the results from use of a mixture of 1.5 lbs. of the acetamide and 0.5 lbs. of the 2,4–D prove nothing beyond possible additive effects because there is no evidence of the effect of 2,4–D *alone* at this rate, i. e., 0.5 lbs. per acre. The same is true of the 50–50 mixture because the description "slight stunting" at 1.0 lb. per acre rate of application of the acetamide reported in the affidavit of September 7, 1965 is not correlatable with the numerical rating in the first affidavit filed March 9, 1965 and because the record lacks the dosage spectrum of 2,4–D. It may well be that one pound or one-half pound per acre of this herbicide alone is approximately as effective in broad-leaf weeds as in the mixtures reported.

We disagree as to the 50–50 mixture. The "slight stunting," noted by the board, referred to pre-emergent effectiveness, and to be consistent with the earlier affidavit post-emergent activity must be compared. The data in column 3 of the table when considered with the lack of activity of the acetamide applied at 1.0 lb. per acre, reported in the second affidavit, indicate that the addition of 2,4–D results in activating the acetamide against the grasses. Accordingly, we *reverse* as to claim 9. We agree, however, that the results shown in column 4 are inconclusive because of the absence of data as to 2,4–D alone at a rate of 0.5 lb. per acre. Nor do we consider such a limited showing to be "clear and convincing evidence" of unexpected effectiveness for the broad range of proportions embraced by the claim. In re Lohr, 50 CCPA 1274, 317 F.2d 388, 137 USPQ 548; In re Miegel and Verbanc,

56 CCPA 761, 404 F.2d 378, 159 USPQ 716. It does not appear to us that a somewhat more extensive exploration of the limits of possible combinations would be particularly burdensome in this instance.

Appellants urge us to judicially notice and consider the technical publications presented with the request for reconsideration. It is the established practice of this court not to consider evidence not considered by the tribunals below since we do not have the benefit of their views thereon. In re Harris, 51 CCPA 786, 324 F.2d 316, 139 USPQ 292; In re Pantzer, 52 CCPA 1135, 341 F.2d 121, 144 USPQ 415.

The decision is affirmed as to claims 1 to 8 and 11 and reversed as to claim 9.

Modified.