**Application of Paul C. DETERS.**

**No. 74–627.**

United States Court of Customs and Patent Appeals.

May 8, 1975.
Rehearing Denied June 30, 1975.

Arthur L. Cain, Cleveland, Ohio (Cain & Lobo, Cleveland, Ohio), attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals affirming the rejection of claims 1 and 2, the only claims remaining in application serial No. 849,686, filed August 13, 1969. We affirm.

## THE INVENTION

The invention relates to apparatus for cutting clay drain tile from a continuously extruded blank of wet, green clay by passing a wire through the blank at regular intervals. The improvement to which appellant's claims are directed lies in causing the cutting wire to move in an undulating path as it passes through the blank, producing individual drain tiles with uneven or undulating ends. As explained by appellant, optimum drainage is obtained when the tiles are laid with small spaces separating them. Tiles with undulating ends are less time-consuming to lay with the proper spacing than are tiles with straight ends. The claims on appeal read:

1. In apparatus for cutting a plurality of clay tile from a continuously extruded and moving blank comprising

means for conveying the tile and tile blank through the apparatus in a predetermined direction of travel with and in continuous motion, cutting means for severing the tile from the blank, and means for passing the cutting means through the blank to sever the tile and to maintain the path thereof perpendicular to the direction of travel of the tile and blank as the blank is continuously extruded and the tile and blank are moved in continuous motion through said apparatus, the improvement of means for reciprocating said cutting means longitudinally, relative to the direction of travel of said tile and blank, as said cutting means makes each perpendicular pass through said continuously moving blank during simultaneous longitudinal movement of said blank and longitudinal movement of said cutting means.

2. In an apparatus for cutting a plurality of clay tile from a blank having a longitudinally extending axis comprising endless chain means for conveying the tile and blank through the apparatus, a rotary cutting reel supporting a plurality of cutting arms thereon having ends spaced apart a greater distance than the diameter of the tile to be cut, wires for cutting and severing the tile from the blank, a said wire extending between the ends of each said arm, guide means carried by said endless chain, each said guide means having a face lying in a plane perpendicular to said axis and engaging said ends of a said arm, said guide means guiding said arms and wire engaged thereby to move in a path perpendicular to said axis of said tile and blank as said tile and blank are advanced through said apparatus, and means maintaining said ends of each said arm in engagement with said face, of said guide means while the wire extending therebetween severs a tile and is in the path of travel of said blank, the improvement that said guide means comprises at least one longitudinally displaced surface on said guide means in a different plane than the

plane of said face, and a plurality of angularly disposed surfaces interconnecting said at least one longitudinally displaced surface with said face of said guide means for reciprocating the ends of said arms and the wires, respectively, carried thereby longitudinally, relative to said axis of said tile and blank, during each cutting and each return pass through said tile blank to cut and sever a tile therefrom.

## THE REJECTIONS
### Patents Cited

| | | | |
|---|---|---|---|
| Nelson | 1,164,846 | Dec. 21, | 1915 |
| Scheibl | 2,263,474 | Nov. 18, | 1941 |
| Deters | 3,503,103 | Mar. 31, | 1970 |

Nelson describes apparatus for cutting bricks with square ends from a moving slab of plastic material with a cutting wire. The cutting wire is guided by rollers which slide along a straight track. Appellant acknowledged at oral hearing that his invention is an improvement on Nelson's basic apparatus.

Scheibl shows a device for making irregular cuts in a moving slab of extruded wet, green clay by guiding the cutting wire or wires with rollers adapted to move longitudinally of the slab in irregularly shaped slots in a template mounted on the device.

Deters, which issued to appellant on the application of which the instant application is a continuation and which thus contains the same disclosure, describes apparatus for "cutting undulated ends on continuously moving tile." Claim 1 of Deters reads as follows:

1. In an apparatus for cutting clay tile from a blank comprising endless chain means for conveying the tile and blank through the apparatus, a rotary cutting reel supporting a plurality of cutting arms thereon having ends spaced apart a greater distance than the diameter of the tile to be cut, wires for cutting and severing the tile from the blank, a said wire extending between the ends of each said arm, guide means carried by said endless chain and having faces lying in verti-

cal planes and engaging said ends of each said arm, respectively, and guiding said arms and wire to move in a vertical path, perpendicular to the longitudinal axis of said tile and blank as said tile and blank are advanced through said apparatus, and means maintaining each said arm end in engagement with the faces, respectively, of said guide means while the wire extending therebetween severs a tile and is in the path of travel of said blank, the improvement that said guide means comprises a plurality of vertically spaced, longitudinally displaced surfaces on said guide means and in a different vertical plane than the plane of said face, and a plurality of angularly disposed surfaces interconnecting each said longitudinally displaced surface with said face of said guide means for reciprocating the ends of said arms and the wires respectively carried thereby longitudinally, relative to said axis of said tile and blank, as said arms and wires are, respectively, guided vertically to cut and sever each said tile from said blank.

The record also contains an affidavit of Sessions, a consulting engineer, which states his opinion that Scheibl does not show how to make undulating cuts automatically and that Scheibl is an inoperative paper patent if employed in the context of appellant's invention. Sessions also gave his opinion that appellant's method was not obvious to one of ordinary skill in the art.

### Examiner's Views

The examiner rejected claim 1 on Nelson and Scheibl as obvious under 35 U.S.C. § 103. In his Answer he explained:

Nelson admittedly shows appellant's apparatus but for the means to reciprocate the cutting wire to make a contoured cut * * *. Scheibl is cited simply to illustrate that which should be obvious to anyone; to wit, if one presents a contoured cam surface for the cutter follower to follow, then the cutter is going to make a contoured cut. The only reason Nelson does not make a contoured cut is because his cam surface * * * is straight.

The board affirmed this rejection:

Appellant has challenged the soundness of this combination of references by faulting the Scheibl patent because it discloses a manually operated mechanism which is intermittent in its operation. In support of his position, appellant has made reference to an affidavit of Mr. Sessions which discusses the Scheibl patent in the same light as appellant has done, i. e., as if it were the basic reference. Such argument ignores the fact that the rejection is on a combination of Nelson and Scheibl. The latter patent is relied upon merely to illustrate the expedient of varying the cutting wire movement to produce a contoured cut. We see no error in such use of this patent.

Nelson discloses a straight right angled cut. If another shaped cut were desired, the upright guide surfaces * * * would, of necessity, be arranged accordingly. A contoured cut would dictate a countered [sic] guide surface * * *. This is what the Scheibl patent teaches us. The disadvantages of the construction and operation of the Scheibl device, as developed at some length in the Sessions affidavit, do not negate its teaching of using a contoured cam surface to produce contoured articles. Thus, we find that Nelson teaches articles can be cut from a continuously fed stream of plastic and Scheibl teaches that a contoured surface can be imparted to such articles by using a contoured cam. To combine these teachings in the manner proposed by the Examiner would appear to be obvious to one having both patents before him. We will, therefore, sustain the rejection of claim 1 under 35 USC 103.

The examiner further rejected claims 1 and 2 on the ground of double patenting in view of the Deters patent claims. We need consider only claim 2 on this ground of rejection.

Initially the examiner was of the view that appealed claim 2 defined the same invention as the patent claims, reasoning that the "plurality" of surfaces on the guide means recited in patent claim 1 was the same as the "at least one" such surface in appealed claim 2. In his Answer, however, the examiner modified this position:

> In any event, however, no reasonable person could possibly argue that "at least one" longitudinally displaced surface is anything more than an obvious variation of the patent claim, which would require a terminal disclaimer so as not to extend appellant's monopoly.

Subsequent to oral hearing but before the board's decision, appellant filed a terminal disclaimer. The board then remanded the application to the examiner to review his double patenting rejection and "to take such further action as, in his opinion may be appropriate." The examiner responded as follows (emphasis in original):

> Appellant has filed a "Disclaimer" in this application subsequent to oral hearing before the Board of Appeals but prior to the Board's decision. The "Disclaimer" was accompanied by *no* showing of good and sufficient reasons why it was not earlier presented.
>
> Rule 195 and M.P.E.P. 1212 require that affidavits, declaration or exhibits submitted after a case has been appealed *must* be accompanied by the aforesaid showing or they will not be admitted. While the rule does not specifically direct itself to disclaimers, it is submitted that a terminal disclaimer filed to overcome a double patenting rejection stands on virtually the same ground as a Rule 131 affidavit filed to overcome a reference rejection, and is subject to the same conditions regarding the timely filing thereof.

Accordingly, appellant is hereby advised that the "Disclaimer" filed October 11, 1973, has not been Officially entered and its merits will not be considered.

Since appellant had not petitioned the Commissioner under PTO Rule 181 (37 CFR 1.181)[1] to reverse the examiner's refusal to enter the disclaimer, the board refused to consider the disclaimer and affirmed the rejection of claim 2 for obviousness-type double patenting, as though no terminal disclaimer had been filed.

## OPINION

### Claim 1

■ We find no error in the reasoning of the examiner and the board with respect to the rejection of claim 1 under § 103. Appellant's allegation that the time lapse between Nelson and Scheibl is evidence of unobviousness is unpersuasive in the absence of any showing that the passage of 26 years is significant. The Sessions affidavit is also insufficient to overcome the PTO's prima facie case of obviousness. Claim 1 is not limited to automatic means for cutting tile, as Sessions appears to assume. That Scheibl may be a "paper patent" is not relevant to its value as evidence of what the level of skill in the art was. Sessions' statement, after study of the application file, that in his opinion the subject matter was not obvious to one of ordinary skill in the art is not evidence entitled to any weight in resolving the issue. In re Lindell, 385 F.2d 453, 55 CCPA 707 (1967). Sessions' qualifications fail to show he was a person skilled in the brick or tile-making art; they show him to be, as admitted at oral argument, a typical "patent expert."

---

1. The pertinent part of the rule, paragraph (a), reads as follows:

    (a) Petition may be taken to the Commissioner (1) from any action or requirement of any examiner in the ex parte prosecution of an application which is not subject to appeal to the Board of Appeals or to the court; (2) in cases in which a statute or the rules specify that the matter is to be determined directly by or reviewed by the Commissioner; and (3) to invoke the supervisory authority of the Commissioner in appropriate circumstances.

*Claim 2*

If appellant's terminal disclaimer was improperly refused consideration by the PTO, the rejection of claim 2 must be reversed, since acceptance of a terminal disclaimer will overcome an obviousness-type double patenting rejection. In re Robeson, 331 F.2d 610, 51 CCPA 1271 (1964). Appellant argues that since 35 U.S.C. § 253, which provides for terminal disclaimers, places no time limitation on filing terminal disclaimers, the PTO may not consider his disclaimer untimely. Appellant cites In re Tanner, 343 F.2d 1018, 52 CCPA 1307 (1965), as authority for considering his disclaimer. What we said in In re Heyl, 379 F.2d 1018, 1021, 54 CCPA 1608, 1612 (1967), answers this point (emphasis in original; footnote omitted):

> Appellant argues that the board's refusal to consider his terminal disclaimer deliberately flouts this court's direction in In re Tanner, 343 F.2d 1018, 52 CCPA 1307 (1965), a decision several months earlier than the board's refusal here. We do not agree. We remanded that case to the board to consider the effect of a terminal disclaimer filed after appeal in the light of *decisions of this court clarifying the law subsequent to the board's action.* Those same decisions were several months prior to the board decision here. See also, In re Dunn, 349 F.2d 433, 52 CCPA 1760 (1965). We, of course, did not mean by those exceptional actions, taken in the interest of justice, to preclude the establishment of orderly procedures for the consideration of terminal disclaimers in the Patent Office. We interpret the board's decision in this case as a refusal to consider the effect of the disclaimer because of its untimely submission. It does not appear that any of our later decisions would affect the propriety of that refusal. We, therefore, will not disturb it. Cf. In re

Pantzer, 341 F.2d 121, 52 CCPA 1135 (1965); In re Harris, 324 F.2d 316, 51 CCPA 786 (1963). We therefore decide the case on the basis that there is no terminal disclaimer for our consideration.

In *Heyl* the terminal disclaimer had been filed with a petition for reconsideration of the board's decision and was refused entry on the ground that to do so would constitute reopening prosecution contrary to PTO Rule 198 (37 CFR 1.198). The interest in orderly PTO procedure we enunciated in *Heyl* is present here. Appellant had ample opportunity to file the disclaimer before final rejection.[2] The examiner's analogizing of the instant situation to the late filing of Rule 131 affidavits is apt. Review of an examiner's refusal to enter an affidavit as untimely is by petition to the Commissioner and not by appeal to the board and thence to this court. Ex parte Hale, 49 USPQ 209 (Bd.App.1940, 1941); MPEP 1002.02. Rule 195 (37 CFR 1.195), on which the examiner relied, provides:

> *Affidavits or declarations after appeal.* Affidavits, declarations, or exhibits submitted after the case has been appealed will not be admitted without a showing of good and sufficient reasons why they were not earlier presented.

Appellant's disclaimer, like the affidavits referred to in the rule, is an action taken to overcome a rejection, in this case for obviousness-type double patenting. This conclusion does not conflict with § 253, which merely provides that disclaimers may be filed. Accordingly, we find no reason to disturb the PTO's decision refusing to enter appellant's disclaimer and decide this case on the basis that there is no disclaimer to consider.

In re Swett, 451 F.2d 631, 59 CCPA 726 (1971), cited by appellant, is inapposite. In that case we reversed a same-

---

**2.** In the final rejection the examiner "again" rejected the claims for double patenting, and stated that a terminal disclaimer would over-

come the rejection of claim 1. (Appellant did not include the first PTO action in the record.)

invention type double patenting rejection, and commented in a footnote:

> We note that appellant's utility patent issued July 9, 1968 and that, because of the delays involved in appealing to this court, there would be an extension of monopoly if obviousness-type double patenting is adjudged to exist and if appellant, pursuant to 35 USC 173 and Rule 155, elects a fourteen-year term. In such an event, we think appellant could file a terminal disclaimer to overcome the "obviousness-type" double patenting rejection.

There was *no* obviousness-type double patenting rejection before us in *Swett.* We were merely stating a possible course of events that could have transpired upon reopening prosecution in the case after its return from the court to the PTO.

■ Since it is possible to infringe claim 2 literally without infringing any of the Deters patent claims literally, same-invention type double patenting is not present. In re Vogel, 422 F.2d 438, 441, 57 CCPA 920, 924 (1970). Claim 2, requiring "at least one" longitudinally displaced surface on the guide means, reads on *one* such surface; the patent claims, by claiming a "plurality," i. e., more than one, of such surfaces, do not. We agree, however, with the PTO that the difference between "at least one" and a "plurality" is a *de minimis*, obvious variation. Appellant has not attempted to deny this. Since no terminal disclaimer was timely filed, we sustain this rejection.

### Conclusion

The decision of the board affirming the rejection of claims 1 and 2 is affirmed.

Affirmed.